IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MARCH 1998 SESSION

FILED

June 18, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 03C01-9707-CC-00273 |
| Appellee, | ) | |
| | ) | GREENE COUNTY |
| VS. | ) | |
| | ) | HON. BEN K. WEXLER, |
| RICKY DALE McNEESE, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Driving While Under the Influence) |

FOR THE APPELLANT:                FOR THE APPELLEE:


EDWARD KERSHAW                **JOHN KNOX WALKUP**
128 South Main St.                Attorney General & Reporter
Suite 102
Greeneville, TN 37743            **ELLEN H. POLLACK**
                                 Asst. Attorney General
                                 425 Fifth Ave., North
                                 Cordell Hull Bldg., Second Fl.
                                 Nashville, TN  37243-0493


                                 **C. BERKELEY BELL**
                                 District Attorney General

                                 **ERIC D. CHRISTIANSEN**
                                 Asst. District Attorney General
                                 109 South Main St.
                                 Greeneville, TN 37743


OPINION FILED:_____



**AFFIRMED**



**JOHN H. PEAY,**
Judge

**O P I N I O N**

The Greene County grand jury indicted the defendant on one count of driving while under the influence. Following a trial, a jury convicted him of the charged offense. Immediately following the verdict, the trial judge sentenced him to eleven months, twenty-nine days with all but ten days suspended. The defendant raises the following issues on appeal:

> 1. Whether the trial court erred when it prevented the defendant from cross-examining a witness about various levels of intoxication and a person's ability to drive effectively.
>
> 2. Whether the trial court erred when it admitted into evidence a bottle of medication found in the defendant's truck.
>
> 3. Whether the trial court erred when it refused to permit the jury to view the actual vehicle in which the defendant had been sitting at the time of his arrest.
>
> 4. Whether the trial court erred when it denied the defendant's request for a special jury instruction.
>
> 5. Whether the evidence is sufficient to support the defendant's conviction.
>
> 6. Whether the defendant's sentence is excessive.

After a review of the record and applicable law, we affirm the judgment of the court below.

In the early morning hours of January 27, 1996, Greeneville city police officers spotted the defendant's truck sitting in the gravel lot of Universal America, Inc. Auxiliary Officer Carl Morgan testified that after he spotted the truck, he and his partner pulled next to it to find out whether anything was wrong. Morgan said he found the defendant sitting in the driver's seat and a female sitting in the passenger seat. He further testified that the truck's engine was running and its lights were on. Morgan said the defendant had spoken in a slurred voice with a thick tongue. The defendant told him

2

that his girlfriend was sick.

When Morgan asked the defendant to exit the truck, the defendant began to walk in an unsteady manner. Morgan testified that he had smelled alcohol on the defendant. Because the defendant had parked in a gravel area, Morgan and his fellow officer asked the defendant to move to a smoother surface close to a nearby building. Once there, the defendant agreed to perform several field sobriety tests. Morgan testified that he had performed "poorly."

Pat Hankins, Morgan's fellow officer, actually administered the tests. He told the court that the defendant's speech had been slurred and "very mumbly." Hankins first asked the defendant to perform the "walk-and-turn test." The defendant could not keep his balance while doing this test and had to put his hands on the nearby building to steady himself. Additionally, the defendant failed to take the number of steps as instructed and he missed hitting heel to toe on numerous steps. The defendant was also unable to keep his arms at his side.

During the second test, the one-leg-stand, the defendant was unable to hold the stance for the required five seconds. He put his leg down after three seconds and told Hankins that he had a bad knee. However, Hankins testified that he had earlier asked the defendant about the presence of any physical problems and the defendant made no comment about a bad knee.

As the third test, the defendant was asked to recite the alphabet. Hankins testified that the defendant had "started, got to H, started over again at E, went to R, got mixed up, then he started saying them too fast . . . ." Hankins said the defendant had

been mumbling so that he could not determine whether the defendant had finished reciting the alphabet or not. The defendant was also unable to perform the fourth test, the finger-to-nose test. He was unable to hit the tip of his nose on both attempts. From these tests, Hankins determined that the defendant was impaired by alcohol and that he was not capable of operating a vehicle.

Hankins further testified that he had found "a collection of beer cans" in the defendant's truck. He found one empty can of Busch beer, four empty Budweiser bottles, one empty can of Budweiser, two cold full cans of Budweiser, and five more empty cans in the back of the truck. Hankins also found a bottle of prescription medicine prescribed for the defendant. The bottle contained a warning label that said, "may cause drowsiness. Alcohol may intense [sic] this effect. Use care when operating a car or dangerous machinery."

As the defendant was being arrested, his brother arrived and asked if he could take the defendant's truck home. Hankins refused his request and had the truck towed. Hankins testified that the defendant had never said he had been waiting for his brother. The officers then took the defendant to the station where he consented to a breathalyser test. The test showed the defendant had a breath alcohol concentration of fourteen hundredths of one percent (.14%).

The defendant then took the stand and testified that prior to his arrest, he and his girlfriend had picked up a six pack of beer and had gone to a friend's house. He said he had consumed two of the beers. Then around 10:00 or 10:30 p.m., he and his girlfriend went to a local bar, The Hideaway. While there, the defendant had two more beers as did his girlfriend. The pair left the bar close to midnight. The defendant testified

4

that as they had been leaving the bar, his girlfriend stepped off the threshold and fell and hit her head. He said that she had appeared to be a little groggy but that she had said she was okay to drive home. However, the defendant said that it became apparent that the girlfriend was not alright to drive and he had her pull over at the Estes Trucking Company parking lot. From there, the defendant drove the truck across the street to a gravel lot. He said he moved the truck there because it was a safe place to park and no one was ever there.

The defendant said he had then decided to sit in the gravel lot and wait for his brother who gets off work around midnight and always drives by this particular spot. He said while he had been waiting, he drank another two beers. He testified that while he felt he could have driven home, he did not because it would have been "too risky." He testified that "the mere smell of alcohol on your breath can get you into a lot of trouble in this town." He further testified that the truck's headlights had been on as well as the interior lights. He said the truck had a quirk in that the interior lights would not work unless the headlights were glowing. The interior lights had been on so that he could see his girlfriend.

As his first issue, the defendant contends that the trial court erred when it prohibited the defendant from questioning Officer Hankins about "the various percent of intoxication levels at which persons may drive effectively." The defendant contends that such questioning was "highly relevant, because it tends to show that the .10 percent blood alcohol ratio that has been established as a presumption by our law is just that 'a presumption' it is not a conclusion."

During the cross-examination of Officer Hankins, defense counsel asked

Hankins about the highest reading he had ever seen on a Breathalyser test. Counsel then attempted to further question Hankins about the condition of the person who had the highest reading. The State objected on grounds of materiality and relevancy and the objection was sustained. Defense counsel then attempted to ask Hankins whether different people with the same Breathalyser result could have varying degrees of impairment. Again, the State objected and the trial court agreed.

First, evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Second, the scope of cross-examination is largely within the trial court's discretion and that discretion will not be disturbed absent a finding of abuse. State v. Lewis, 803 S.W.2d 260, 262 (Tenn. Crim. App. 1990). Thus, we have no trouble concluding that the trial court did not err when it refused to allow defense counsel to engage in the questioning outlined above. The questioning had no tendency to make any fact of consequence to the defendant's case more or less probable. It was completely irrelevant to the proceeding and, therefore, we find no abuse of discretion on behalf of the trial court. The jury had already heard ample evidence of how this defendant was impaired. How someone other than the defendant may have acted at a similar level of intoxication has no place in this trial. This issue is without merit.

As his second issue, the defendant argues that the trial court erred when it admitted into evidence a bottle of medication that was found in the defendant's truck at the time of his arrest. He contends that the bottle was irrelevant and prejudicial because the jury may have been given the impression that the defendant had been mixing alcohol and prescription medication.

At trial, Officer Hankins testified that he had found a bottle of medication in the defendant's car. The trial court allowed the introduction of the bottle despite the defendant's objections. The trial court told defense counsel that this issue should have been raised earlier and overruled the objection. However, the trial judge told defense counsel that he would be allowed a wide berth in cross-examining the officer. In addition, the defendant testified that while the bottle had been in his car, he had not taken any of the medication on that night. From this, we conclude that the error, if any, was certainly harmless beyond a reasonable doubt. T.R.A.P. 36(b); Tenn. R. Crim. P. 52(a). This issue is without merit.

In his third issue, the defendant argues that the trial court erred when it refused to allow the jury to view the truck that he had been driving when he was arrested. He wanted to show the jury that in order to operate the interior lights the headlights must be on as well. The State objected because of the ten month lapse between the defendant's arrest and the trial. The trial judge agreed, saying, "Yeah, anything can be changed. That's just too long. [The jury] can believe this witness or not believe him, whichever they desire to do. I'm sure that would be the truth if we went over there at this time."

The defendant argues that he should not be punished for the ten month delay prior to trial. He claims that "[t]o punish [him] for the delay in our judicial system is unconstitutional." The defendant is missing the point. He was not being punished for the delay in going to trial. Rather, the trial court was pointing out that showing the truck to the jury would require proof from the defendant that the truck had not been altered since the date of the offense. The defendant made no effort to present such proof other than the defendant's statement that the truck had had that quirk for some time. We find no

7

error in the trial court's refusal to allow the jury to view the truck. As the trial judge noted, the truck would have certainly operated as the defendant said it would. The jury heard the defendant testify that the headlights had to be on in order for the interior lights to work. It was then for the jury to decide whether or not to believe the defendant. This issue is without merit.

The defendant next contends that the trial court erred when it denied his request for a special jury instruction. He requested that the jury specifically be told that the defendant "could not be found guilty for driving on a road but rather it had to be while on the parking lot." This is because the indictment alleged that the defendant had committed the offense of driving while intoxicated by being in physical control of a motor vehicle. The indictment did not allege that the offense was committed by the defendant's driving a vehicle. He also argues that the trial judge incorrectly charged the jury that the defendant could be found guilty if he were in physical control of a vehicle on a public road, highway, street, or alley, or upon premises generally frequented by the public. He contends this is error because the indictment only charged him with being in physical control of a vehicle upon premises generally frequented by the public, not on a public road, highway, street, or alley.

The difficulty here is that the defendant did admit to driving his truck across the road and into the gravel lot. However, he was not indicted for doing so. Thus, the jury could not have considered his admission as evidence of his guilt of the charged offense. This point became somewhat confused during the State's closing argument. As a result, the trial judge gave the following instruction to the jury:

> The indictment in this case charges [the defendant] unlawfully committed the offense of driving while intoxicated by being in physical control of a motor vehicle on a premises generally frequented by the public at large, to-wit: the parking

8

lot of Universal American, Inc.

> The defendant has admitted that he drove across the road to get into this parking lot when his girl friend was . . . something happened to her. He's not charged in the indictment with driving on a public road, but he is charged with being under the influence and having in his control a vehicle upon a premises generally frequented by the public. Whether that was in his control or not is a question that you all will have to decide. Now, the fact that he did drive it across the road can be looked at as to whether he had the authority to move it, and that can be looked at whether it was in his control. I'll charge you the normal charge after lunch.

The jury was then dismissed for lunch and when its members returned, the trial judge gave the following instruction:

> Any person who commits the offense of driving under the influence is guilty of a crime. For you to find the defendant guilty of this offense the State must have proven beyond a reasonable doubt the existence of the following essential elements:
> No. 1, that the defendant was driving or in physical control of an automobile, and that the defendant was doing so on a public road, highway, street or alley, or upon a premises generally frequented by the public at large; and
> No. 3 [sic], that the defendant was under the influence of an intoxicant or narcotic drug . . . .

The judge further instructed the jury on the meaning of "in physical control of the motor vehicle."

The defendant argues that the jury was misled by this second instruction. While the potential for confusion is present, we cannot conclude that reversible error has occurred. Because the evidence is sufficient to find that the defendant was intoxicated while in physical control of his vehicle in an area generally frequented by the public, we can find no harm suffered by the defendant as a result of the conflicting instructions. We also note that during its deliberations, the jury sent a note to the trial judge asking for a definition of "generally" and "public at large." This is certainly an indication that the jury was not confused by the conflicting instructions and that the jury's verdict was based on

9

the proper evidence.

The defendant, however, continues to argue that the verdict cannot stand because the State failed to prove that the lot in which he was sitting was an area generally frequented by the public. A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As noted above, sufficient evidence existed such that the jury could have properly concluded that the establishment's parking lot was "generally frequented by the public at large." Officer Hankins testified that the gravel lot belonged to Universal America and that the defendant's truck was sitting at the edge of the lot next to the road's emergency lane. He further testified that the area in which the defendant had parked was generally frequented by the public. The defendant, however, testified that he had chosen to park in the gravel lot because he had once worked at Universal America and knew that it was a warehouse where items are loaded in and out on an infrequent basis. On cross-examination, the defendant admitted that the gravel lot was next to a public road and that it was a lot that belonged to a business establishment. He also admitted that the lot was not fenced, that he saw no "No Trespassing" signs, and that he knew of no restrictions on the lot. From the above testimony, we conclude that the jury had sufficient evidence to determine that the area where the defendant had stopped his truck was an area generally frequented by the public at large. The defendant does not

10

challenge the other elements of the offense. Thus, we find no merit to the defendant's sufficiency challenge.

The defendant next argues that his sentence is excessive. The trial court sentenced the defendant to eleven months, twenty-nine days with all but ten days suspended. The defendant argues that he should have been given the minimum sentence of forty-eight hours of incarceration.

When a defendant complains of his or her sentence, we must conduct a de novo review with a presumption of correctness. T.C.A. § 40-35-401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40-35-401(d) Sentencing Commission Comments. This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In this case, the trial court noted the defendant's previous criminal history as a factor in determining the length of the sentence. The defendant had been convicted of driving while under the influence in 1981 and several other driving offenses during this same time period. The defendant has failed to show that the sentence is improper. There being no abuse of discretion on behalf of the trial court, we affirm the defendant's sentence.

For the foregoing reasons, we affirm the judgment of the court below.

_____
JOHN H. PEAY, Judge

CONCUR:

11

_____
PAUL G. SUMMERS, Judge

12

_____
CORNELIA A. CLARK, Special Judge